79 N.J. Super. 433 (1963)
191 A.2d 788
RALPH ANTONELLI AND MARIE ANTONELLI, HIS WIFE, AND DANIEL AMSTER AND LUCILLE J. AMSTER, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
THE PLANNING BOARD OF THE BOROUGH OF WALDWICK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 25, 1963.
Decided June 7, 1963.
*435 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Alfred S. Nugent, Jr. argued the cause for defendant (Messrs. Orbe and Nugent, attorneys).
Mr. Daniel Amster argued the cause for plaintiffs.
*436 The opinion of the court was delivered by GAULKIN, J.A.D.
The Law Division granted summary judgment in favor of plaintiffs in this action in lieu of prerogative writs (77 N.J. Super. 119) and defendant appeals.
Plaintiffs' complaint alleged that they applied to defendant, pursuant to the Waldwick zoning ordinance, for approval of plaintiffs' proposed parking area, to be used to service a store building which plaintiffs plan to build, and that defendant refused the approval on the following grounds: "a) The parking lot would extend about 179 feet into a residential zone, but the law only permits a 150-foot extension, requiring about 12 parking spaces to be dropped to conform. b) The ingress and egress routes are not appropriate and, c) Plans did not include outdoor lighting."
The complaint alleged that "the action of the Planning Board * * * is unreasonable, arbitrary and capricious * * * in violation of the provisions of the Zoning Ordinance * * * and * * * is * * * a * * * deprivation of plaintiffs' rights under the provisions of Article 14 of the Constitution of the United States of America."
Defendant's answer seemed to deny, pro forma, that the reasons for the denial were couched in the language quoted above. The answer did not set forth the defendant's version of the reasons, but the affidavit of Daniel Manning, a member of the planning board, submitted in answer to the motion for summary judgment, said: "* * * the Board voted to deny approval * * * for the reasons, among others, that the proposed parking area extended too far into the adjacent residential zone immediately to the north of the applicant's property, that the proposed entrances and exits for ingress and egress were not in conformity with the Borough zoning ordinance and were not, in the judgment of the Board, adequate or appropriate to insure traffic safety and protect the residential properties on Dora Avenue, and, that there was no lighting plan disclosed in said site plan."
It is important to note that nowhere in the record do we find the resolution of the planning board which is under *437 attack, or any official memorial or minutes of its action. It appears that there was a hearing or hearings at which plaintiffs and objectors appeared, but very little of what transpired appears in the data submitted to the trial judge on the motion for summary judgment. That data includes no evidence with reference to traffic safety and the protection of adjacent residence zones. And, of course, there is no proof as to what findings the defendant made, and whether they were made on the basis of testimony or the knowledge of the planning board or both. Consequently, the trial judge treated the issues as questions of law for the determination of which he did not need more facts than appeared in the data before him.
After considering the pleadings, affidavits and exhibits, the trial judge held that the zoning ordinance does not require outdoor lighting, but only that if any such lighting is provided it must be so arranged as to reflect the light away from all adjoining residences. With this we agree.
The remaining questions revolve about section 607 of the zoning ordinance, which provides:
"Any person desiring to establish a parking area required for a business use in a residence zone shall submit plans to the Planning Board showing the location, size, shape, design, landscape, curb, cuts [sic] and other features of the parking lot. The establishment and operation of a restricted parking area in such parts of any residence district that abut a business district is permitted where such areas extend continuously from such business zone for a distance not to exceed 150 feet. All such parking areas in all residence zones may then be authorized, subject to the following conditions:

* * * * * * * *
Each entrance to and exit from such parking lot shall be at least 20 feet distant from any adjacent property located in any residence zone, and the location and design of entrances, exits, surfacing, landscaping, marking and lighting shall be subject to approval of the Planning Board to insure adequate relation to traffic safety and protection of the adjacent residence zones." (Emphasis ours)
Plaintiff's property fronts on the northerly side of Prospect Street, beginning at a point about 90 feet east of its intersection with the easterly side of Franklin Turnpike. Prospect Street and Franklin Turnpike are strip-zoned for business. *438 The area east of the Franklin Turnpike and north of the Prospect Street business zones is residential, and it is in that area that the plaintiffs wish to place their parking lot.
The dispute over whether the lot will extend into the residential area more than the 150 feet permitted by the ordinance revolves chiefly over whether the distance is to be measured only from the rear line of the business zone fronting on Prospect Street (as the defendant claims) or whether it may also be measured from the rear line of the Franklin Turnpike business zone.
Plaintiffs claim that the latter is the correct rule, and, if followed, it would put all of the parking area within 150 feet of one or the other of the two business zones. However, it seems to us that this construction ignores the words in section 607 which require such parking areas to "extend continuously from such business zone." Plaintiffs do not own the land which bounds the rear line of the Franklin Turnpike business zone; hence, their proposed parking area could not "extend continuously" from the Franklin Turnpike business zone and may not be measured from that point. It is therefore not necessary for us to express an opinion upon defendant's argument that, even if plaintiffs property did abut the Franklin Turnpike business zone, the ordinance requires that the 150 feet be measured only from the rear of the Prospect Street business zone because that is the street on which the property fronts.
The trial judge said that "under the present state of facts, it is almost impossible to tell where the 150 feet begins and ends." We agree. However, as he pointed out, "the plaintiffs are willing to be confined to the 150 foot area." Since we have established the point from which the measurements are to be taken, the parties should have no difficulty in agreeing upon the boundaries of the parking area.
The trial judge held that defendant did not have the right to forbid exits from the parking area into Dora Avenue. We disagree. We hold that, under the ordinance, the defendant did have that right if it was reasonably necessary to do so *439 "to insure * * * traffic safety and protection of the adjacent residence zones." We hold further that the plaintiffs did not establish, with the certainty required for summary judgment, that the action of the defendant in so doing was unreasonable, arbitrary or capricious.
Plaintiffs argue that, even though they have almost 300 feet of frontage on Prospect Street, they have the absolute right to use Dora Avenue for ingress and egress from the parking area because the rear of their property runs along the southerly line of Dora Avenue. To support this argument they cite cases for the proposition that a property owner may not be deprived of access to the highway on which his property fronts. It was on the basis of these cases that the trial judge held the plaintiffs could not be deprived of access to Dora Avenue.
However, that is not the issue here. No one disputes plaintiffs' right to access to Dora Avenue for purposes permitted in a residential area and for as long as the rear of plaintiffs' property remains residential. The issue here is whether, when plaintiffs seek permission to extend their parking area 150 feet into the residential area, the planning board may condition that permission upon plaintiffs' not using Dora Avenue for ingress and egress. The resolution of that issue depends upon whether (1) under the ordinance the right to establish a business parking area in a residential zone is absolute or conditional, and (2) if conditional, whether the ordinance gave the planning board the right to impose the condition that there may be no exit or entrance on Dora Avenue.
We think section 607 plainly makes the right to establish a business parking area in a residential zone conditional upon the approval of the planning board, subject to the standards set forth in the ordinance. The property owner must first "submit plans to the Planning Board showing the location, size, shape, design, landscape, curb cuts and other features of the parking lot." The parking area "may then be authorized" if the planning board is satisfied with "the following conditions." Then follow a number of conditions, among which are *440 that "the location and design of entrances, exits * * * shall be subject to the approval of the Planning Board to insure adequate relation to traffic safety and protection of the adjacent residence zones."
Plaintiffs do not challenge section 607 of the ordinance or the designation of the planning board to act on behalf of the municipality. N.J.S.A. 40:55-1.13; Kozesnik v. Montgomery Twp., 24 N.J. 154, 178, 186 (1957). Cf. Saddle River Country Day School v. Saddle River, 51 N.J. Super. 589 (App. Div. 1958), aff'd o.b. 29 N.J. 468 (1959); Newark, etc., Cream Co. v. Parsippany-Troy Hills Twp., 47 N.J. Super. 306 (Law Div. 1957). Indeed, they could not, for under section 607 the delegation to the planning board of the power to act is inextricably interwoven with the privilege to intrude 150 feet into the residential zone. If the delegation to the planning board were held invalid, section 607 would fall with it and plaintiffs would have to apply for a variance.
What plaintiffs do challenge is the action of the planning board. They say first that the action was beyond the powers bestowed on defendant by section 607. We disagree. We hold that, if it was reasonably necessary to forbid access to Dora Avenue to insure traffic safety or to protect the adjacent residence zones, the planning board had the right to condition the approval of the parking area upon the forbidding of access to Dora Avenue. Cf. North Plainfield v. Perone, 54 N.J. Super. 1 (App. Div. 1959), certif. denied 29 N.J. 507 (1959). The ordinance must be liberally construed in favor of the municipality to accomplish its express purpose. L.P. Marron & Co. v. Mahwah Tp., 39 N.J. 74 (1963).
If defendant did have the power to forbid access to Dora Avenue, plaintiffs challenge the exercise of that power here as unreasonable, arbitrary and capricious. The action of the defendant is presumptively valid and the burden of proof that it was unreasonable is on plaintiffs. Rexon v. Board of Adjustment of Haddonfield, 10 N.J. 1 (1952); Brandt v. Zoning Board of Adjustment of Mt. Holly Tp., 16 N.J. Super. 113 (App. Div. 1951). But whether the action was *441 unreasonable, arbitrary or capricious must be decided upon the basis of what was before the planning board and not on the basis of a trial de novo, by affidavit or otherwise, before the Law Division. Marrocco v. Board of Adjustment of the City of Passaic, 5 N.J. Super. 94 (App. Div. 1949), certif. denied 3 N.J. 379 (1949); Rexon, supra. The trial court should have remanded the case to the planning board for a plenary hearing, proper findings and a proper record.
Even if a trial de novo were proper, plaintiffs' affidavits were not sufficient to establish, with the certainty required for a summary judgment, that it was unreasonable for defendant to prevent the flow of traffic to and from the parking area into Dora Avenue in the interests of safety and to protect the adjacent residential property. Plaintiffs said in their affidavits that they had shown their plans to the Waldwick chief of police and he had said the plans provided "the only logical and safe way of controlling traffic out of the said property." This was hearsay and, in any event, not sufficient to establish safety conclusively. There was no proof at all in plaintiffs' affidavits that the adjacent residential area, fronting on Dora Avenue, would not be harmed by the traffic; a question, incidentally, particularly unsuited to trial by affidavit.
The judgment is reversed and the case is remanded to the planning board for such proceedings as may be necessary to bring this matter to a speedy conclusion, consistent with this opinion. We do not retain jurisdiction.